**SO ORDERED.**

**SIGNED this 23 day of June, 2009.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BOOT HILL BIOFUELS, LLC | ) | Case No. 08-13128 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

### ORDER DENYING MOTION TO ALTER OR AMEND
### EMPLOYMENT ORDER (Dkt. 45)

Stinson Morrison Hecker , LLC ("SMH") seeks to alter or amend this Court's prior order approving SMH's employment as counsel to the debtor-in-possession, but conditioning such approval on SMH's waiver of attorney fees accrued during the gap period between the involuntary petition date and the conversion date and denying SMH retroactive appointment to the date of the

-1-

Case 08-13128   Doc# 99   Filed 06/23/09   Page 1 of 8

involuntary petition.[1] The Court entered a lengthy and detailed written order detailing the extent to which SMH would be employed and the terms of that employment on March 27, 2009 ("Employment Order").[2] SMH filed its Rule 9023 Motion on April 9, 2009. Creditor Biofuel Venture I, LLC ("BVI"), the petitioning creditor, filed its "Comment" on April 27, 2009.[3] On April 30, 2009, the Court, after notice and hearing, approved the debtor and BVI's joint disclosure statement and confirmed the joint plan of reorganization. At that hearing, BVI advised the Court that while it consented to the plan's confirmation, its consent did not extend to an agreement as to SMH's application for attorneys' fees, reserving the right to object to the reasonableness of those fees. It is also noteworthy that, prior to this Court entering its Employment Order, but after a contested evidentiary hearing on SMH's application that consumed one-half day, BVI announced that it would no longer oppose SMH's application to be employed. With BVI's current response, it appears that the sands have again shifted under SMH's effort to obtain court-ordered compensation from the estate for services it rendered to the debtor from December 1, 2008, the involuntary petition date, through January 15, the date of SMH's application.

SMH's motion seeks this Court's reconsideration of its Employment Order (1) that SMH not be compensated for work performed from December 1 until December 23, the date of the case's conversion to chapter 11; and (2) that SMH be denied retroactive appointment to December 1, 2008, due to a failure to show extraordinary circumstances. In its Rule 9023 Motion, SMH waives its gap

---

[1] Dkt. 52 ("Rule 9023 Motion").

[2] Dkt. 45.

[3] Dkt. 74. As stated in that response, "BVI supports SMH's employment on the terms set forth in the Court's Opinion," and therefore the Court construes BVI's comment as a response in opposition to SMH's Rule 9023 Motion.

-2-

period fees, not in total as required by the Employment Order, but as to those gap period fees in excess of its $10,000 retainer.[4] SMH now also seeks to change the proposed date for its retroactive employment from December 1, the involuntary petition date as sought in its application, to December 23, the date of conversion and the order for relief.[5]

Facts

The facts surrounding this matter were set out in exhaustive fashion in the March 27 Employment Order and need only be repeated here so far as necessary to clarify context and timing. BVI filed an involuntary chapter 7 petition against debtor on December 1, 2008. On December 22, debtor (by SMH) moved to convert the case to chapter 11 and an order converting the case was entered December 23. Debtor (by SMH) filed its schedules and statements on January 8, 2009. SMH filed its employment application on January 15, seeking retroactive employment to December 1. At the evidentiary hearing on SMH's application on February 18, it was disclosed that SMH accrued attorney fees of approximately $20,000 for the month of December and $25,000 for the month of January.[6] These fees were not disclosed in SMH's application. SMH did disclose in its application that it received a $10,000 retainer from debtor for representation in the bankruptcy; that retainer was received December 22, 2008. SMH's billing statement for December, attached to its

---

[4] Dkt. 52, p. 1.

[5] Dkt. 52, p. 1. The Court declines to address SMH's proposed alternative date for retroactive employment. Having failed in its effort to take a large bite of the apple, SMH now seeks a second, albeit smaller, bite at the apple. The new December 23, 2008 date was not advanced by SMH in its application and the Court declines to address a position that could have been advanced when SMH filed its application. In any event, advancing a different date of retroactivity does nothing to demonstrate the extraordinary circumstances necessary for retroactive employment.

[6] Dkt. 45, p. 15; BVI Ex. E-19

Rule 9023 Motion, reflects that at least some of the December fees were incurred in responding to the involuntary petition, converting to chapter 11, and *in preparing its employment application*, during the gap period December 1-23, 2008.[7] In its Employment Order, the Court conditioned SMH's appointment upon SMH waiving its fees accrued during the gap period because, in the Court's view, the liability for those fees supported a claim under § 502(f) and § 507(a)(3) that rendered SMH a creditor during that time period. The Court also denied retroactive employment of SMH to December 1, 2008, finding that SMH had failed to demonstrate extraordinary circumstances that would justify retroactive employment.

Discussion

Motions to alter or amend judgment are only appropriate when a court has misapprehended the facts, a party's position, or controlling law.[8] It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.[9] Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law; (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.[10] Here, SMH asserts that the Court misapprehended controlling legal principles by denying it the right to apply its retainer to fees it earned in the gap period. It also argues that the Court misapprehended controlling law when it exercised its discretion to deny retroactive employment and compensation to SMH.

---

[7] Dkt. 52-1. *See* time entries of 12/18/08, 12/19/08, 12/22/08 and 12/23/08.

[8] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[9] *Id.; Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[10] *Servants of Paraclete, supra* at 1012; *Brumark Corp. v. Samson Resources, Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

Turning first to the application of SMH's retainer to its gap fees, SMH cites several cases for the proposition that courts may adopt a flexible standard that allows the retention of counsel during the gap period and application of retainers to pay what amount to § 503(b) administrative expenses. None of these cases arose in this Circuit nor are any of them factually apposite. Here, debtor did not pay SMH a retainer until the day it filed the motion to convert, ostensibly in anticipation of SMH's prosecuting the now-voluntary chapter 11 case. Debtor now seeks to apply these funds to pay fees incurred prior to the payment of the retainer. To permit this would be to allow SMH to be paid the very fees this Court required it to waive as a condition to its being permitted to represent the debtor- in-possession going forward. Nothing in SMH's motion suggests that the Court's decision that SMH was a creditor by virtue of the fees it incurred before the conversion is incorrect. By definition, SMH was a creditor and therefore was not a disinterested person eligible for employment under the express provisions of § 327(a). Recall, too, that SMH did not disclose these fees to the Court until the February 18, 2009 evidentiary hearing. This Court expressly conditioned SMH's employment going forward on its waiver of the gap fees that made it a creditor and declines to alter that ruling now.

In defense of its effort to gain retroactive employment, SMH asserts that Tenth Circuit authority on this point, specifically the *Land* case, is factually distinguishable. SMH notes that in *Land*, counsel sought retroactive employment approval because of neglect that led to a four-year delay in filing an employment application. Here, the delay was only about six weeks. While *Land* is not factually identical, it contains a clear statement of the law in the Tenth Circuit (and, indeed, many other Circuits) that retroactive employment applications may only be approved in

-5-

Case 08-13128    Doc# 99    Filed 06/23/09    Page 5 of 8

extraordinary circumstances.[11] The Third Circuit thoughtfully articulated this approach in *In re Arkansas Co., Inc.* where it asked: (1) whether a timely application would have been approved; (2) whether the applicant was disinterested and non-adverse to the estate; and (3) whether the services rendered were necessary. As examples of extraordinary circumstances, the *Arkansas Co., Inc.* court included the applicant's failure to timely apply being beyond its control, the presence of extreme time pressure, the length of the delay, and a consideration of how payment of the compensation would affect third parties.

In this case, experienced bankruptcy counsel simply did not make a timely application, seemingly without any excuse whatever. On December 22, 2008, the firm entered its appearance, filed a motion to convert the involuntary case to a voluntary chapter 11, and secured a $10,000 retainer from the debtor. An application for employment was a necessary part of the package, but counsel, for some unexplained reason, failed to file it, despite having billed time on December 18 for drafting an engagement letter, and on December 19 and 22 for drafting the application. An order converting the case was entered on December 23, 2008. This is a long way from "extraordinary circumstances." As the First Circuit stated in *Jarvis*,

> Prior approval is to be preferred because it permits the bankruptcy court to supervise the administration of the estate more closely, and minimizes the chance that the court will be confronted with a fait accompli. To achieve these desirable ends, the prior approval requirement must have teeth. A relatively strict standard, such as extraordinary circumstances, serves this purpose. At the same time, it encourages

---

[11] *See In re Land*, 943 F.2d 1265, 1272 (10th Cir. 1991), *In re Jarvis*, 53 F.3d 416, 421 (1st Cir. 1995), *In re Arkansas Co., Inc.*, 798 F.2d 645, 650 (3rd Cir. 1986), all adopting "extraordinary circumstances" standard. *But see contra*, *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994)(employing an excusable neglect standard, but pattern of doing work first and seeking court approval later was not excusable neglect).

-6-

compliance with the statute and eliminates opportunities for manipulation.[12] This Court likewise encourages compliance with the clear and well-known rule of prompt application for employment and considers that the strictly limited availability of retroactive relief curbs "general nonobservance" of the rules laid down in § 327.[13]

Applying these rules to the history of this case, there is virtually no excuse for SMH's failure to timely seek employment. It had a long history with this debtor, with the principals of the debtor, and, indeed, a long history with BVI. BVI had threatened the involuntary filing on November 24, 2008, but even after the petition date, debtor and BVI continued to work to resolve their differences. Indeed, BVI paid Boot Hill's attorneys fees to SMH for services through November. Resolving those differences would likely have required a chapter 11 plan, given that several of the slot-noteholders withheld their consent to the spin-off of Boot Hill to BVI that was contemplated in November of 2008.

It is of paramount importance in a contentious case that debtor's counsel make a prompt application for employment so that the Court and *all* the creditors know who represents whom and on what terms. In this case, SMH's application appears to have been made as an afterthought, some six weeks after the petition date and four weeks after conversion, and without disclosure of fees it earned in the gap. A timely application, filed with the firm's entry of appearance and debtor's

---

[12] 53 F.3d at 421. The Court notes that the local rules of this District are engineered to encourage both prompt applications for and approval of applications to represent debtors in possession. As D. Kan. LBR 2014.1 provides, attorneys are to file these applications with the petition. The applications are to be noticed to a motion docket, but if no objections to the retention are filed, the Court may enter appropriate employment orders. This Court routinely approves interim employment applications in exigent circumstances.

[13] 53 F. 3d at 421, citing *In re Kroeger Properties & Dev., Inc.,* 57 B.R. 821, 822-23 (9th Cir. BAP 1986).

motion to convert, would have clarified SMH's status in the case and likely crystalized whatever principled or unprincipled opposition BVI had to SMH's retention by the debtor. Paraphrasing the *Jarvis* court, prompt compliance would have prevented a *fait accompli*, manipulation of the system, and saved significant judicial resources.[14]

Finding no basis to alter or amend the Court's March 27, 2009 Employment Order, SMH's motion is DENIED.

# # #

---

[14] 53 F.3d at 421.